IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,     *

    Plaintiff,               *

v.                       *      Criminal Action No. GLR-13-677-21

MICHAEL ALLEN SMITH,     *

    Defendant.           *

***

## MEMORANDUM OPINION

Pending before the Court is Defendant Michael Allen Smith's Motion for Compassionate Release (ECF No. 1389). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will deny the Motion.

## I.    BACKGROUND

In November 2011, at the age of nineteen, Smith was involved in a Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") sting operation, where he aided in an armed robbery of a fictitious drug stash house. (Mot. Compassionate Release at 1, ECF No. 1389).[1] Following law enforcement intervention, arrest, and conviction, Smith pleaded guilty to conspiracy to possess with intent to distribute over 500 grams of cocaine and received a ninety-six-month sentence. (Id.).

---

[1] Citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

In 2013, while incarcerated, Smith was indicted for racketeering and drug trafficking as part of his involvement with the "Up Da Hill" Baltimore gang. (Redlined Superseding Indictment at 3, 7–8, 24–25, ECF No. 419). Smith pleaded guilty to one count of conspiracy to participate in a racketeering enterprise in violation of 18 U.S.C. § 1962(d). (Plea Agreement at 1, ECF No. 780). The statement of facts in his plea agreement explains that when he was seventeen, Smith shot and killed a rival gang member, although Smith contests this fact. (Id. at 10). The facts further state that "it was reasonably foreseeable to SMITH that [Up Da Hill] was responsible for the distribution of at least 1 kilogram of heroin, 5 kilograms of cocaine, 280 grams of crack cocaine, and a quantity of marijuana." (Id. at 9). Ultimately, Smith received a twenty-four-year sentence to run concurrently with his ninety-six-month sentence. (J. at 2, ECF No. 878).

To date, Smith has served fourteen years in prison. (See Presentence Report at 2, ECF No. 805). Throughout his time in custody, Smith has undergone some rehabilitation, including working towards his GED and completing vocational training, sports, health, and commercial driving. (BOP Records at 2, ECF No. 1404-1). In his Motion for Compassionate Release, Smith expresses a desire to use these skills to help others, particularly youth, avoid making the same mistakes he made, identifying Safe Street and Roca as two local Baltimore organizations he wishes to partner with. (July 21, 2025 Letter at 1, ECF No. 1389-1).

Despite these rehabilitative efforts, Smith also has accumulated eight disciplinary infractions while incarcerated, including charges related to weapons possession, narcotics possession, and fighting with other prisoners. (Inmate Discipline Data at 1–3, ECF No.

2

1406-1). Smith, however, has not had any infractions reported in the last three years. (See id.)

Smith has filed multiple post-conviction pleadings, including a Motion to Vacate (with subsequent amendment), a Notice of Appeal, and a Rule 52(b) Motion for Relief, all of which have been denied or dismissed. (See ECF Nos. 986, 1141, 1174, 1187, 1310, 1314). Smith filed the instant Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i) and the First Step Act of 2018 on July 25, 2025. (ECF No. 1389). The Court later appointed counsel to represent Smith in this matter. (ECF Nos. 1395). Smith, through counsel, filed a Supplement to his Motion on December 17, 2025, in which he requests a five-year sentence reduction. (Def.'s Mem. L. Suppl. Def.'s Mot. Sentence Reduction ["Suppl."] at 2, ECF No. 1404). The Government filed an Opposition on December 23, 2025, (ECF No. 1406), and Smith filed a Reply on December 23, 2025, (ECF No. 1407).

## II.    STANDARD OF REVIEW

As a general rule, a district court "may not modify a term of imprisonment once it has been imposed," unless certain limited exceptions apply. United States v. High, 997 F.3d 181, 185 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)). Under 18 U.S.C. § 3582(c)(1)(A), however, a court may modify a term of imprisonment. See United States v. Maycock, No. GLR-14-0133, 2020 WL 2395620, at *1 (D.Md. May 12, 2020). The First Step Act of 2018 amended and further expanded the compassionate release provision, allowing federal inmates to file motions for sentence reductions without having to rely on

The Bureau of Prisons ("BOP") to initiate any motion for compassionate release. United States v. Gregory, 538 F.Supp.3d 562, 565–66 (D.Md. 2021).

Before moving for compassionate release, the defendant must either exhaust all administrative remedies or wait thirty days "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. 18 U.S.C. § 3582 (c)(1)(A). The court must then determine if the defendant demonstrated "extraordinary and compelling reasons" supporting relief to be eligible for a sentence reduction. United States v. Bethea, 54 F.4th 826, 831 (4th Cir. 2022). Lastly, the court "must . . . find that release is appropriate under 18 U.S.C. § 3553(a) sentencing factors, to the extent those factors are applicable," id., as well as whether reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582 (c)(1)(A)(ii). The court has discretion to grant or deny a motion for compassionate release based on circumstances involving "illness, declining health, age, exceptional family circumstances, as well as 'other reasons.'" United States v. Williams, No. ELH-19-0286, 2023 WL 4490325, at *7 (D.Md. July 11, 2023) (citing U.S.S.G. § 1B1.13). The other factors include whether the defendant is a danger to the safety of any other person or to the community under 18 U.S.C. § 3142(g).

### III.    DISCUSSION

**A.    <u>Administrative Exhaustion</u>**

First, as to exhaustion, Smith has shown, and the Government does not dispute, that he has exhausted his administrative remedies. (<u>See</u> Pl.'s Resp. Opp'n Def.'s Mot. Compassionate Release ["Opp'n"], ECF No. 1406). Specifically, Smith submitted a

request for compassionate release or reduction of sentence to the BOP, which the BOP received on May 8, 2025. (Response to Inmate Request to Staff at 4, ECF No. 1389-1). On May 22, 2025, Warden Rickard denied Smith's request. (Id.) More than thirty days have elapsed since the BOP received Smith's request, and the BOP has not filed a motion on Smith's behalf. Smith, therefore, has exhausted his administrative remedies, and his Motion is properly before the Court for consideration on the merits.

**B.    Extraordinary and Compelling Reasons**

As to the merits of Smith's Motion, this Court has previously held in line with the growing consensus that 18 U.S.C § 3582, as amended, grants courts with independent discretion to decide whether and under what circumstances "extraordinary and compelling reasons" to modify a sentence exist. United States v. Wise, No. ELH-18-72, 2020 WL 2614816, at 5–7 (D.Md. May 22, 2020). While not binding, Section 1B1.13 of the United States Sentencing Guidelines ("U.S.S.G.") can aid in this analysis. Section 1B1.13 provides examples of what constitutes "extraordinary and compelling reasons" including: medical conditions of the defendant; familial circumstances; whether the defendant is a victim of abuse; and "other reasons" that are "similar in gravity" to the factors listed in U.S.S.G. § 1B1.13(2). United States v. McCoy, 981 F.3d 271, 275 (4th Cir. 2020).

**1.    Rehabilitation**

To start, courts can consider successful rehabilitation efforts as part of its analysis of whether extraordinary and compelling reasons are present. See United States v. Harris, No. 21-6781, 2022 WL 636627, at *1 (4th Cir. Mar. 4, 2022) (per curiam). In fact, it is procedurally improper for a court not to address a defendant's evidence of rehabilitation.

United States v. Gutierrez, No. 21-7092, 2023 WL 245001, at *4 (4th Cir. Jan. 18, 2023). Successful rehabilitation alone, however, does not warrant a sentence reduction. United States v. Davis, No. 21-6960, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022).

In this case, BOP records indicate that Smith "is self-sufficient and has worked to develop useful abilities in order to acquire and maintain post[-]incarceration employment." (Suppl. at 9). Smith also has engaged in other rehabilitative efforts, such as working to obtain his GED, completing vocational training, and participating in sports and health programs. (BOP Records at 2). On the other hand, Smith has incurred a total of eight disciplinary infractions while incarcerated, with the most recent infraction occurring in 2022. (Inmate Discipline Data at 1–3). His infractions include possession of dangerous weapons, possession of narcotics, and fighting with other prisoners. (Id.) Thus, despite his activities and trainings, Smith's regular disciplinary activity—albeit not occurring within the last three years—is not reflective of significant rehabilitation that would warrant a sentence reduction.

### 2.    Unstable Upbringing

A defendant's unstable upbringing is another factor that a court may consider when determining whether to grant a sentence reduction. See United States v. Ramsay, 538 F.Supp.3d 407, 426 (S.D.N.Y. 2021). In this case, Smith grew up in impoverished circumstances. (Presentence Report ¶ 38). He was raised in a single-parent household, and his father has been absent for the entirety of his life. (Id.). Smith was surrounded by gang activity and raised in a gang-infested environment. (Suppl. at 9). He began using narcotics at the age of thirteen, dropped out of high school, and became involved in the criminal

justice system as a teenager. (Presentence Report ¶¶ 43, 45). Smith also was shot at the age of sixteen. (Id. ¶ 41).

This Court recognizes that Smith endured a troubled past and a turbulent upbringing. Based on the record, it appears Smith had few to no positive role models in his environment and became engaged in the criminal justice system quite early because of his surroundings. Given the challenging circumstances Smith faced growing up and the resulting instability, the Court finds Smith's unstable upbringing to be a mitigating factor in the determination of whether extraordinary and compelling reasons exist for a sentence reduction.

### 3.    Youth at Time of Offense

Next, courts have found that a defendant's youth is an important factor in determining the existence, or lack thereof, of extraordinary and compelling circumstances. See McCoy, 981 F.3d at 286, 288. In particular, the potential likelihood of lapses in understanding, the possibility of "diminished culpability," and the opportunity to reform as one continues to develop psychologically into adulthood serve as worthwhile reasons for considering one's youth in sentencing modification. See Miller v. Alabama, 567 U.S. 460, 471–72 (2012).

Unlike most similarly situated cases in which this District has granted a motion for compassionate release or sentence reduction, here, Smith is not facing a life sentence. (See J. at 2). And his current sentence of 288 months, or twenty-four years, already falls short of this District's routinely imposed sentence of approximately thirty years for "youthful defendants 'involved in drug-related killings.'" (Id.); United States v. Taylor, No. CCB-02-0410-3, 2023 WL 4407593, at *4 (D.Md. July 7, 2023) (quoting United States v.

Williams, No. CCB-07-0402, 2021 WL 3725435, at *3 (D.Md. Aug. 23, 2021)); see also Williams, 2021 WL 3725435, at *3 (collecting cases). The Court also finds that the violent and widespread crimes that Smith committed as a youth—racketeering, drug trafficking over six kilograms of lethal narcotics—are extraordinarily serious and, thus, do not support a sentence reduction. (Presentence Report ¶¶ 1, 30); United States v. Arellano, No. 3:09-CR-00060-MR-1, 2022 WL 325457 at *5 (W.D.N.C. Feb. 2, 2022) (finding that defendant's crimes of threatening and kidnapping two children and bank robbery were extraordinarily serious and weighed against granting compassionate release), aff'd, No. 22-6187, 2022 WL 2156098 (4th Cir. June 15, 2022). Thus, notwithstanding his relative youth, Smith's extraordinarily serious criminal conduct and sentence below the typical thirty-year range for "youthful defendants 'involved in drug-related killings'" do not support compassionate release. Taylor, 2023 WL 4407593, at *4 (quoting Williams, 2021 WL 3725435, at *3).

###    4.    Low Recidivism Risk

As to the last factor, generally speaking, "[t]he age-crime curve . . . demonstrates that criminal behavior tends to decrease with age." U.S.S.G. app. C, amend. 829. But, a low risk of recidivism, taken alone, is insufficient to show "an extraordinary and compelling reason justifying a sentence reduction." United States v. Sanders, No. JKB-20-0168, 2024 WL 1014095, at *2 (D.Md. Mar. 8, 2024) (quoting United States v. Powell, No. 2:11-205, 2023 WL 5489030, at *4 (E.D.Va. Aug. 24, 2023)). In characterizing a defendant's risk for recidivism "as an extraordinary and compelling circumstance," a court should consider that defendant's risk of reoffending in the context of the 18 U.S.C.

8

§ 3553(a) sentencing factors, not in isolation. United States v. Little, No. 4:97-CR-41-1, 2025 WL 1862997, at *3 n.3 (E.D.Va. July 7, 2025). A defendant's "continued willingness to commit crimes shows . . . an extremely high probability of recidivism." United States v. Frye, No. CRIM.2:09-CR-291, 2010 WL 1854652, at *4 (D.S.C. May 7, 2010), aff'd, 417 F.App'x 259 (4th Cir. 2011). Moreover, "[a] Defendant's consistent recidivism . . . gives [a] Court . . . pause in finding . . . extraordinary and compelling circumstances." United States v. Hinton, No. 2:15CR80, 2022 WL 988372, at *5 (E.D.Va. Mar. 31, 2022), aff'd, No. 22-6420, 2022 WL 3699962 (4th Cir. Aug. 26, 2022).

Here, Smith is thirty-three years old. (Presentence Rep. at 3). While he committed the crimes for which he is currently incarcerated at the ages of seventeen and nineteen, he has since accumulated a total of eight disciplinary infractions. (Id. at ¶¶ 28, 30; Inmate Discipline Data at 1–3). All eight of these infractions took place during Smith's adulthood, with the most recent occurring only three years ago, when he was thirty. (Id.). And Smith's infractions involved weapon possession, narcotics possession, and fighting with other prisoners. (Id.) Accordingly, this factor does not weigh in favor of a reduced sentence.

In conclusion, on balance, Smith is not entitled to compassionate release on the basis of extraordinary and compelling circumstances. In any event, this Court will consider Smith's Motion under Section 3553 sentencing factors. Little, 2025 WL 1862997, at *3 n.3.

9

C.      **Section 3553 Sentencing Factors**

Even if a defendant establishes that extraordinary and compelling reasons exist to support a sentence reduction, a court must consider the 18 U.S.C. § 3553(a) factors to determine whether, in its discretion, a reduction of sentence is appropriate. An exhaustive analysis of all the Section 3553(a) factors is not required, nor must a court address each of the defendant's arguments. United States v. Jenkins, 22 F.4th 162, 170 (4th Cir. 2021). Instead, the district court must consider the parties' arguments and provide a reasonable basis for its decision. High, 997 F.3d at 190. The § 3553(a) factors include:

> (1) the nature of the offense and the characteristics of the defendant;
> (2) the need for the sentence imposed;
> (3) the kinds of sentences available; and
> (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a).

1.      **Nature and Circumstances of the Offense**

Starting with the nature and circumstances of the offense, the gravity of Smith's crimes is significant. Through his involvement in the Up Da Hill Gang, Smith participated in a conspiracy to engage in a racketeering enterprise. (Presentence Report ¶ 6). As part of this mission, members of the gang distributed cocaine, crack cocaine, and heroin throughout the Cherry Hill Baltimore neighborhood. (Id. ¶¶ 1–2). Up Da Hill is also associated with the murder of an individual named Charles Pratt. (Id. ¶ 10; Mot. Compassionate Release at 2). Additionally, two years after his on-the-record activity with Up Da Hill, Smith was involved in an ATF sting operation, where he took part in planning

10

an armed robbery of a fictitious drug house, ultimately pleading guilty to conspiracy to possess with the intent to distribute over 500 grams of cocaine. (Mot. Compassionate Release at 1; 2011 Indictment at 1–2, ECF No. 608-1). The nature and severity of Smith's crimes, as discussed above, cannot be understated.

### 2.      Characteristics of the Defendant

Turning to his history and characteristics, Smith grew up in an impoverished environment, which included living in a single-parent home in Baltimore's public housing system. (Presentence Report ¶ 38). Smith's father has not been present in his life whatsoever, and Smith was raised in gang-infested neighborhood and shot at the age of sixteen. (Suppl. at 9). As previously mentioned, Smith struggled with substance abuse starting at the age of thirteen. (Presentence Report ¶ 43). He also dropped out of high school and was involved in the criminal justice system as a teenager. (Id. ¶ 45). Smith committed the crimes for which he is currently incarcerated at the ages of seventeen and nineteen. (Id. ¶¶ 17, 30). Given his relative youth at the time of these crimes and his troubled upbringing, his characteristics serve as a mitigating factor here; however, Smith's eight infractions while imprisoned, with the most recent occurring in his thirties, counteracts this assertion. (See Inmate Discipline Data at 1–3).

### 3.      Need for the Sentence Imposed

Looking next to the need for the sentence imposed to provide just punishment, reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence to criminal conduct, and provide rehabilitative services, the Court is satisfied with the twenty-four-year sentence as originally prescribed.

Although the Court recognizes the significance of the sentence, it is warranted to convey the seriousness and of the crimes committed. That is not to say that Smith's efforts towards rehabilitation while in prison are not admirable or noteworthy. His use of prison resources, progress towards earning his GED, and completion of vocational training in carpentry and substance abuse counseling are commendable. (BOP Records at 2). These efforts, however, do not move the needle enough, particularly in light of the infractions he has accumulated. (Inmate Discipline Data at 1–3). The sentence as imposed ensures that Smith will continue to receive opportunities for rehabilitation whilst ensuring the public's safety and deterring him from committing criminal acts in the future.

4.      **Kind of Sentences Available**

As to the next factor, the Court finds that Smith's sentence comports with the kind of sentences available. The Court's calculations were within the sentencing guideline ranges, finding that Smith's crimes supported "a total offense level of 40 and a criminal history category of IV," with a corresponding imprisonment range of thirty years to life imprisonment. (Presentence Report ¶ 51). In moving for a sentence reduction, Smith highlights that the prosecution originally offered him a plea bargain of twelve years, seeming to indicate that the twenty-four-year sentence is unnecessary. (See Suppl. at 12–13). This argument, however, falls short. It is not uncommon for a defendant to receive a lower plea bargain, and their failure to accept it does not mandate that a court must reduce the sentence later.

**5.      Need to Avoid Unwarranted Sentencing Disparities**

Finally, the Court examines the need to avoid unwarranted sentencing disparities. Smith concedes that his sentence "is in line with that of typical federal sentences for murder" but suggests that given his youth, impoverished upbringing, gang-infested environment, and family situation, he should receive special treatment. (See Suppl. at 13 (arguing that his circumstances "warrant[ ] a substantially lower sentence than . . . all defendants convicted of similar offenses") (emphasis added)). As discussed, Smith's sentence fits squarely in line—if not under—similarly-situated defendants. See Taylor, 2023 WL 4407593, at *4 (citations omitted); Williams, 2021 WL 3725435, at *3 (citations omitted). Furthermore, his failure to demonstrate a low risk of recidivism; the need for the sentence to provide just punishment, deter crime, and protect the public; and his further need for rehabilitative services outweigh Smith's assertions. In sum, the extraordinary and compelling factors and the Section 3553(a) factors, in the aggregate, weigh against Smith's request for a sentence reduction. The Court, therefore, will deny Smith's Motion for Compassionate Release.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES Smith's Motion for Compassionate Release (ECF No. 1389). A separate Order follows.

Entered this 31st day of March 2026.


                                        _____/s/_____
                                        George L. Russell, III
                                        Chief United States District Judge


13